UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 17-cv-848 (RJL) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**FILED**
FEB 2 2 2018
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**

February 20, 2018 [Dkt. # 17]

Plaintiff American Oversight ("plaintiff") seeks expedited review of its Freedom of Information Act ("FOIA") request to the Department of Justice ("DOJ" or "the Department") for records concerning Noel Francisco, Solicitor General of the United States ("General Francisco" or "Francisco"). Before the Court is Plaintiff's Motion for Partial Summary Judgment [Dkt. # 17]. For the reasons that follow, the Court will **DENY** the Motion.

**PROCEDURAL HISTORY**

On March 7, 2017, President Donald J. Trump announced his intention to nominate Noel J. Francisco as Solicitor General of the United States. *See* Part. Mot. for Summ. J. ("MSJ"), Ex. 1, at 1–2 [Dkt. 17-3]. At the time, Francisco was serving as Acting Solicitor General. *See* Pl.'s Statement of Material Facts as to Which There is No Dispute ("Pl.'s

Statement of Undisputed Material Facts") ¶ 1 [Dkt. # 17-9]. Prior to January 20, 2017, Francisco had been a partner at the Jones Day law firm in Washington, D.C. *See id.* ¶ 2.

As Acting Solicitor General, Francisco noticed his appearance in a case filed in the Ninth Circuit challenging an executive order issued by President Trump regarding the so-called "travel ban" of certain aliens into the United States. *See Washington v. Trump*, No. 17-35105, ECF No. 4 (9th Cir. Feb. 4, 2017). *See id.* ¶ 3. Two days later, General Francisco's former firm, Jones Day, entered the case as an amicus opposed to the Government's position. *See id.* ¶ 4. That afternoon, the Government filed its Reply brief. *Id.* ¶ 5. The Government's brief stated in a footnote that Francisco had "refrained from signing the brief, out of an abundance of caution, in light of a last-minute filing of an amicus brief by [his] former law firm." *Id.* (quoting Reply Supp. Emergency Mot. Stay Pending Appeal, *Washington v. Trump*, No. 17-35105, ECF No. 70, at *1 (9th Cir. Feb. 6, 2017)). General Francisco did not, however, withdraw from the case, and went on to sign subsequent filings. *See id.* ¶ 8. He provided no further explanation for his decision not to sign the Reply brief before the Ninth Circuit panel. *See id.* ¶¶ 8–9.

On April 7, 2017, one month after the President's announcement of Francisco's nomination as Solicitor General, plaintiff filed the FOIA request that gives rise to this case. *Id.* ¶ 11; *see also* 5 U.S.C. §§ 552 *et seq.*; 28 C.F.R. pt. 16.[1] Plaintiff seeks records concerning (i) General Francisco's role in litigation surrounding the Trump

---

[1] Plaintiff is a "nonpartisan organization committed to the promotion of transparency in government, the education of the public about government activities, and ensuring the accountability of government officials." First Am. Compl. ("FAC"), Ex. A, at 2 [Dkt. # 16-1].

Administration's "travel ban," and (ii) ethics issues related to General Francisco's service in the Office of Solicitor General. FAC, Ex. A, at 2–3.[2] Plaintiff addressed its request to several offices within the Department of Justice, including (i) the Office of Information Policy ("OIP"); (ii) the Office of Solicitor General; and (iii) the Civil Division. *Id.* at 1.[3]

---

[2] The request reads as follows:

 (1) Records reflecting any recusal or disqualification of Noel Francisco from any matter, or from matters involving any particular parties or participants.
 (2) Any conflicts or ethics waivers or authorization issued for Mr. Francisco, including authorizations pursuant to 5 C.F.R. § 2635.502.
 (3) Any record reflecting a determination by DOJ that 5 C.F.R. § 2635.502 or any other ethics requirement did not preclude Mr. Francisco's continued participation in the Ninth Circuit appeal or other litigation regarding the travel ban, including any determination by the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of Legal Counsel, or the Departmental Ethics Office.
 (4) All records reflecting Mr. Francisco's participation in litigation regarding the travel ban, including but not limited to the appeal in the U.S. Court of Appeals for the Ninth Circuit regarding the State of Washington's challenge to that ban, between 11:01 AM on Monday, February 6, 2017, and the earlier of (i) the date and time of any written waiver or authorization received by Mr. Francisco authorizing him to continue to participate in that particular matter responsive to Item 2 or (ii) February 16, 2017. Please include:
   a. Any documents or emails during this period concerning the travel ban litigation, including talking points, legal analysis, argument, briefing, or strategy for the Ninth Circuit appeal sent or received by Mr. Francisco or upon which he was copied.
   b. Any documents or e-mails during this period exchanged among lawyers participating in the matter—including but not limited to Catherine Dorsey, Lowell Sturgill, Sharon Swingle, Douglas Letter, H. Thomas Byron, Edwin Kneedler, and August Flentje—discussing or concerning Mr. Francisco's participation in the matter, including any oral comments received from Mr. Francisco regarding the briefing, argument, strategy, or legal analysis for the Ninth Circuit appeal.
   c. Calendar entries, meeting agendas, or notes during this period reflecting Mr. Francisco's attendance or participation in any meeting or call regarding the Ninth Circuit appeal or other litigation regarding the travel ban.
   d. Records reflecting hand-written notes or comments regarding the Ninth Circuit appeal or other litigation regarding the travel ban from Mr. Francisco prepare during this period, such as edits on a draft brief.
 (5) Any communications with the Office of Government Ethics regarding Mr. Francisco's continued participation in the Ninth Circuit appeal or other litigation regarding the travel ban.

FAC, Ex. A, at 2–3.

[3] Pursuant to DOJ regulations, the Office of Public Affairs processes FOIA requests made under 28 C.F.R. § 16.5(e)(1)(iv) on behalf of (among others) the Office of the Attorney General, the Office of the Deputy Attorney General, and the Office of the Associate Attorney General. *See* 28 C.F.R. § 16.5(e)(2).

The FOIA request runs nine pages in length, and cites five media articles concerning Mr. Francisco's nomination. *See id.* at 6 & n.18. By reason of "widespread and exceptional media interest and . . . possible questions concerning the government's integrity, which affect public confidence," the request seeks expedited processing of any responsive documents. *Id.* at 7. In its briefing, plaintiff explains that it submitted its FOIA request to ascertain "Mr. Francisco's approach to ensuring his conduct complied with ethical standards." MSJ at 3.

The DOJ denied plaintiff's request for expedited processing. The Office of Information Policy, Office of Solicitor General, and the Civil Division each sent American Oversight a letter explaining their reasons for denial. [Dkt. ## 17-4, 17-5, 17-6].[4] In each letter, the responding office explained that, pursuant to DOJ policy, it had referred the request for expedited processing to the Director of the Department's Office of Public Affairs, Sarah Isgur Flores. *Id.* While Director Flores agreed that plaintiff's request involved "a matter of widespread and exceptional media interest," *id.*, she concluded that plaintiff's request did not "pertain[] to a matter 'in which there exist possible questions about the government's integrity [that] affect public confidence." *Id.* For this reason, plaintiff's request for expedited review was denied. *Id.*

As a result, plaintiff filed the instant action on May 9, 2017, [Dkt. # 1], moving immediately for a preliminary injunction, [Dkt. # 3]. Within weeks, on May 26, 2017, the Department produced to plaintiff four documents responsive to its request. *See* Notice of

---

[4] The Office of Information Policy's letter was dated April 24, 2017; the Office of Solicitor General's letter was dated April 25, 2017; and the Civil Division's letter was dated May 16, 2017. *See id.*

Production [Dkt. # 12]. These documents were emails granting General Francisco ethics waivers to continue working on specific litigation matters; three of the four pertained to the executive order litigation referenced in American Oversight's FOIA request. *See id.* Following this disclosure, plaintiff withdrew its motion for a preliminary injunction on May 30, 2017. [Dkt. # 13]. In its Partial Motion for Summary Judgment, however, plaintiff still seeks expedited review of its FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(iv), and that provision's implementing regulation, 28 C.F.R. § 16.5(e)(1)(iv).

## STATUTORY SCHEME

In 1996, Congress amended the Freedom of Information Act ("FOIA") to make available a path for expedited process of certain requests. *See* Electronic Freedom of Information Act Amendments of 1996 ("Electronic FOIA"), Pub. L. No. 104-231, § 8, 110 Stat. 3048 (codified as amended in 5 U.S.C. § 552(a)(6)(E)). Expedited requests will be "taken out of turn," a departure from the ordinary first-in, first-out practice of processing FOIA petitions. *See* Revision of Freedom of Information Act, 63 Fed. Reg. 29,591, 29,592 (June 1, 1998). In Electronic FOIA, Congress directed "[e]ach agency" to "promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records" in two circumstances: first, in "cases in which the person requesting the records demonstrates a compelling need," *id.* § 552(a)(6)(E)(i)(I), and, second, in "other cases determined by the agency," *id.* § 552(a)(6)(E)(i)(II).

Pursuant to this statutory authority, the DOJ promulgated a regulation specifying four circumstances in which expedited processing would be permissible.[5] *See* 28 C.F.R. § 16.5(e)(1)(i)–(iv). Subsection (iv) is the sole regulatory provision at issue in this case. That subsection allows for expedited processing of FOIA requests concerning "[1] [a] matter of widespread and exceptional media interest [2] in which there exist possible questions about the government's integrity [3] that affect public confidence." *Id.* § 16.5(e)(1)(iv). In issuing subsection (iv), the DOJ relied on its statutory authority to "provide for expedited processing of records . . . in other cases to be determined by the agency," rather than its power to promulgate regulations in cases of "compelling need." *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 31 n.9 (D.D.C. 2004). The Department has interpreted subsection (iv) to require that "the same matter that draws widespread and exceptional media interest must be the matter in which there exists possible questions about the government's integrity that affect public confidence." Decl. of Sarah Isgur Flores ¶ 6 ("Flores Decl.") [Dkt. # 19-2]. DOJ regulations provide that the Director of the Office of Public Affairs ("OPA") process requests relying on subsection (iv), *i.e.*, those involving "widespread and exceptional media interest." *See* 28 C.F.R. § 16.5(e)(2).[6]

---

[5] These are: "(i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; (ii) An urgency to inform the public about the actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information; (iii) The loss of substantial due process rights; or (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 5 C.F.R. § 16.5(e)(1)(i)-(iv).

[6] This enables "the Department's media specialists [to] deal directly with matters of exceptional concern to the media." 63 Fed. Reg. at 29,592.

## LEGAL STANDARD

Agency decisions whether to deny or grant a request for expedited processing are subject to judicial review. *See* 5 U.S.C. § 552(a)(6)(E)(ii).[7] Judicial review "shall be based on the record before the agency at the time of the determination." *Id.* The standard of judicial review depends on the basis of the agency decision. *See Al-Fayed*, 254 F.3d at 307 n.7. Courts apply *de novo* review to regulations issued pursuant to Electronic FOIA's "compelling need" prong. *Id.*

By contrast, courts grant deference to regulations promulgated pursuant to the second, discretionary prong, *i.e.*, "cases determined by the agency." *Id.*; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(II). This is because Congress' grant to the DOJ to determine cases in which expedited processing is appropriate constitutes an "express delegation of authority," *id.* (quoting *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)), which, the Supreme Court tells us, renders "any ensuing regulation . . . binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute," *Mead*, 533 U.S. at 227.

The DOJ's regulation providing for expedited processing "in cases determined by the agency" is one such regulation. 5 U.S.C. § 552(a)(6)(E)(i)(II). "[A]n agency's reasonable interpretation of [] regulations" adopted pursuant to such an "express delegation of authority" is entitled to the same degree of deference as the regulation itself. *See Al-Fayed*, 254 F.3d at 307 n.7 (citing *United States v. Cleveland Indians Baseball Co.*, 532

---

[7] The person seeking expedited processing bears the burden of showing that expedition is appropriate. *See Al-Fayed*, 254 F.3d at 305 n.4.

U.S. 200, 218–19 (2001)); *see also Public Investors Arbitration Bar Ass'n v. S.E.C.*, 771 F.3d 1, 3 (D.C. Cir. 2014); *Hall & Assocs. v. U.S. Environ. Protection Agency*, 77 F. Supp. 3d 40, 47 (D.D.C. 2014).

## DISCUSSION

The Department of Justice has interpreted subsection (iv) to require that "the same matter that draws widespread and exceptional media interest must be the matter in which there exists possible questions about the Government's integrity that affect public confidence." Flores Decl. ¶ 6.[8] OPA Director Flores has explained the way in which the DOJ applies this interpretation:

> OPA views the media interest and reporting as an indicator of whether public confidence might be affected by any possible questions about the government's integrity that the requester raises. Where the media coverage that a requestor points to does not mention the possible questions of government integrity that a requestor suggests might exist, this suggests to OPA that the questions do not rise to the level of affecting public confidence.

*Id.* ¶ 7.

In this case, "OPA determined that [plaintiff's] request pointed to sufficient media interest in Noel Francisco's nomination to the position of Solicitor General." *Id.* ¶ 8. "Nevertheless," Director Flores continued, "this media interest was only in the fact of the nomination and did not raise or consider Mr. Francisco's participation in the executive order litigation, which [plaintiff] points to as raising possible questions about the government integrity that affect public confidence." *Id.* ¶ 9. Plaintiff therefore failed to

---

[8] American Oversight does not challenge the reasonableness of the DOJ's promulgation of the "media interest" regulation. MSJ at 6.

meet its burden, "[b]ecause [plaintiff's] request did not demonstrate that the matter attracting media interest (the nomination) was a matter in which there exist possible [ethics] questions, and because the cited media coverage did not indicate any public concern over the questions that American Oversight raised." *Id.* ¶ 10.

I. **The Measure of Deference Due the DOJ's Interpretation**

Plaintiff contends that the DOJ is not entitled to deferential review of its interpretation because "there is no evidence that the interpretation advanced in this litigation results from an agency's reasoned and considered view of the regulation entitled to deference." Reply in Support of Pl.'s Mot. for Part. Summ. J. ("Reply"), at 11 [Dkt. # 20]. More specifically, plaintiff contends that DOJ's requirement that the matter of "widespread public attention" also be the matter in which "possible questions about the government's integrity that affect public confidence" exist is unreasonable because of the absence of (i) "regulation or guidance" memorializing this interpretation, (ii) "publicly available statements regarding how to interpret the regulation," and (iii) "internal guidance or training material relying on this interpretation." *Id.* I disagree.

Put simply, plaintiff misunderstands the governing case law. Although plaintiff's catalogue of preferred materials may constitute evidence of a "reasoned and considered view," those materials are not required to ensure one. Indeed, the DOJ has noted that an interpretation of a regulation otherwise entitled to deference may, itself, warrant deference even if it "first appears during litigation, unless the interpretation conflicts with prior interpretations or amounts to nothing more than a convenient litigating position."

*Shieldalloy Metallurgical Corp. v. Nuclear Reg'y Comm'n*, 768 F.3d 1205, 1208–09 (D.C. Cir. 2014). And no such characterization is warranted here.

The DOJ's current interpretation of subsection (iv) does not conflict with any past ones. Nor can I say that the DOJ's reading of subsection (iv) is "nothing more than a convenient litigating position." *Id.* at 1209. Although the Flores Declaration does not chart the origin of the DOJ's interpretation, the Department has advanced a similar interpretation of subsection (iv) in several past cases. *See Electronic Privacy Information Ctr. ("EPIC") v. Dep't of Justice*, 322 F. Supp. 2d 1, 5–6 (D.D.C. 2003) ("As for 'possible questions about the government's integrity,' moreover, [plaintiff] placed nothing before [the agency] except" a single *New York Times* editorial, which failed to raise ethical issues sufficient to affect public confidence), *vacated as moot* Civ. No. 04-5063, 2004 WL 2713119 (D.C. Cir. Nov. 24, 2004); *A.C.L.U. v. Dep't of Justice*, 321 F. Supp. 2d 24, 31 (2004) ("The government, however, argues that the newspaper articles cited by plaintiffs in their request for expedited processing do not suffice to demonstrate a significant amount of media interest in the issue or suggest an improper government act to the detriment of public confidence."). And in both cases, this District Court accepted and applied the DOJ's interpretation of subsection (iv) to the record before the DOJ at the time of its decision as to the expedited processing request. As such, this is hardly a case in which the Department's "interpretation was unannounced and would have a negative impact on the rights of affected parties who had no notice of the interpretation." Reply at 13 (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155–56) (2012)).

What plaintiff truly appears to be troubled by is the DOJ's practice of looking to the media articles as one indication as to whether any "possible questions [exist] as to the government's integrity that affect public confidence." Flores Decl. ¶ 7. But this, of course, is a wholly appropriate way for the DOJ to analyze the issue. The regulation does not ask whether possible questions exist that *might* or *could*—should they become known—affect public confidence in the government's integrity. It asks whether there are possible questions as to the Government's integrity "that affect public confidence," full stop. The primary way to determine whether such possible questions exist is by examining the state of public coverage of the matter at issue, and whether that coverage surfaces possible ethics issues so potentially significant as to reduce public confidence in governmental institutions.

In the final analysis, Director Flores correctly concluded that plaintiff had met its burden of showing that there was the necessary media interest concerning General Francisco's nomination, but that none of the articles raised any ethical issues concerning his nomination, or his work in the Solicitor General's Office, or for Jones Day. As such, the Department reached the only conclusion supported by the plain meaning of the rule and their existing precedent in analyzing it. That decision was both reasonable and legally sound.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment [Dkt. # 17]. A separate order consistent with this opinion will be issued this day.

RICHARD J. LEON
United States District Judge